## Viosca's Estate.

197    280
202   ¹175

*Executors and administrators—Foreign administration—Comity between states.*

The comity between civilized states requires of them an acknowledgment of each other's local laws determining rights of property, but this comity does not extend so far as an acknowledgment of the right of the foreign representative of a decedent's estate to take possession of, and remove the assets of the estate beyond the jurisdiction of this state, when such removal may be prejudicial to creditors who are citizens of this state.   Hence an ancillary administrator must take possession of the assets, and in his hands they are under the jurisdiction of the courts of Pennsylvania, subject to the just claims of Pennsylvania creditors.   When these are satisfied the Pennsylvania representative must pay over the balance to the foreign representative.   The requirement of a Pennsylvania administrator is not for the protection of Pennsylvania debtors at their residence, but is for the protection of the assets of the estate, so that they may, through the Pennsylvania courts, be reached in this state by those having legal claims upon them.

*Executors and administrators—Ancillary administrator—Foreign decedent—Promissory note—Act of March 15, 1832.*

Where a foreign executor brings a promissory note into Pennsylvania and secures the appointment of an ancillary administrator to whom he gives a note which is the only asset of the estate in Pennsylvania, such administrator is entitled to the administration as against an administrator appointed at the instance of a foreign creditor in another county in Pennsylvania where the maker of the note resides.   In such a case, the note being the only asset of the decedent in Pennsylvania, had its situs in the county into which the foreign executor brought it, and under the express terms of the act of March 15, 1832, the register of that county had a right to grant the ancillary letters.

Argued Oct. 26, 1899.   Appeal, No. 91, Oct. T., 1899, by Philip Engelskirger, from decree of O. C. Allegheny County, June Term, 1898, No. 218, dismissing appeal from register of wills, in the estate of James Viosca, deceased.   Before STERRETT C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ.   Affirmed.

Appeal from register of wills.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court, dismissing the appeal from register of wills.

*D. T. Watson*, with him *W. H. Forbes* and *Johns McCleave*.— Where a nonresident testator leaves an estate in this commonwealth consisting of one item only, viz: a debt evidenced by an unsealed promissory note owing by a resident of Venango county, the register of Venango county has the exclusive jurisdiction to grant ancillary letters testamentary upon said estate in this commonwealth: Eyster's Est., 5 Watts, 133; Act of March 15, 1832, P. L. 135, sec. 6.

Under the common law, for the purpose of the administration of the estate of a decedent, simple contract debts due the decedent constitute assets at the place where the debtor resides at the time of the death of the testator: Attorney General v. Bouwens, 4 M. & W. 191; France v. Aubrey, 2 Lee Eccl. Rep. 232; Hilliard v. Cox, 1 Salk. 37; Yoeman v. Bradshaw, Carth. 373.

This general rule of the common law has been generally adopted in the United States: Wyman v. Halstead, 109 U. S. 656; Arnold v. Arnold, 62 Ga. 627; Pinney v. McGregory, 102 Mass. 190; Ames's Est., 52 Mo. 290; Becraft v. Lewis, 41 Mo. App. 546; Cooper v. Beers, 143 Ill. 25; Thompson v. Wilson, 2 N. H. 291; Stearns v. Wright, 51 N. H. 600; Banta v. Moore, 15 N. J. Eq. 97; Chapman v. Fish, 6 Hill, 554; Fox v. Carr, 16 Hun, 434; Kohler v. Knapp, 1 Brandf. 241; Grant v. Reese, 94 N. C. 720; Dial v. Gary, 14 S. C. 581; Vaughn v. Barret, 5 Vt. 333.

Under the act of 1832, where the estate of a foreign decedent in Pennsylvania consists of only one debt, administration should be granted by the register of the county where the debtor resided: Sayre's Executors v. Helme's Executors, 61 Pa. 299.

The physical presence of the note in Allegheny county at the time when letters were granted there, does not confer jurisdiction on the register of that county, because it merely evidenced the debt, which had its situs in Venango county: Schley's Est., 2 W. N. C. 684; Shakespeare v. Fidelity Ins. Trust & Safe Deposit Co., 97 Pa. 173; Becraft v. Lewis, 41 Mo. App. 546; Chapman v. Fish, 6 Hill (N. Y.), 554; Banta v. Moore, 15 N. J. Eq. 97; Lanesborough v. Berkshire County, 131 Mass. 424; Sommers v. Boyd, 48 Ohio, 648; Ferris v. Kimble, 75 Tex. 476; Hunter v. Board of Supervisors, 33 Iowa, 376; Johnson v. Oregon City, 2 Ore. 327.

The grant of letters on this estate by the register of Venango county unto Philip Engelskirger cannot be attacked collaterally before this court in this proceeding: Frick's App., 114 Pa. 29; Lovett's Executors v. Mathews, 24 Pa. 330; Shoenberger's App., 139 Pa. 132; Wilson v. Gaston, 92 Pa. 207.

*Walter Lyon*, with him *Charles H. McKee*, for appellee.— We submit that it is no difference whether the rule at common law is that ancillary letters can only be granted at the residence of the debtor. The statute of Pennsylvania has changed the rule.

Choses in action have no locality: Jarman on Wills, 712; Wilkins v. Ellett, 76 U. S. 740.

OPINION BY MR. JUSTICE DEAN, October 8, 1900:

James Viosca was a resident of Lower California in the republic of Mexico, where he died in June, 1895. At the date of his death he had in his possession a promissory note payable to his order eighteen months after date, in the sum of $31,250 signed by J. D. Springer, Allen Manvelle and Charles Miller. The last named was a resident of Franklin, Venango county, Pennsylvania; the other two drawers were not residents of this state. On May 10, 1898, H. W. Mitchell of Pittsburg presented a petition to the register of Allegheny county setting out that the only estate of Viosca, deceased in Pennsylvania, was the note, and that it was in his possession and prayed that ancillary letters of administration be issued to him. James Viosca, Jr., son of deceased, was executor of his father's will under the laws of Mexico; he had brought the note to Allegheny county, and put it in Mitchell's possession; he concurred in the petition for the issue of letters to Mitchell, who exhibited the note to the register. Letters were accordingly issued to Mitchell, who brought suit as administrator in the common pleas of Allegheny county against Miller; the summons was duly served upon him within the county, on May 10, 1898. Fourteen days after the service of the writ and while the suit was pending, to wit: on May 24, 1898, upon the petition of the Carmen Island Salt Company, an alleged creditor of Viosca, deceased, stating the only asset in this state was the Miller note, the register of Venango county issued

ancillary letters of administration on the Viosca state to this appellant, Engelskirger. The latter then petitioned the register of Allegheny county to revoke the letters previously granted to Miller; after hearing, the petition was refused. An appeal from his decision was taken to the orphans' court of Allegheny county, and the decision of the register was affirmed in opinion filed by that court. We have now this appeal by the Venango administrator.

It is argued that the court below erred in not holding that as the only asset of Viosca, deceased, within the commonwealth, was the promissory note in question, that note for the purposes of administration had its situs at the residence of the debtor in Venango county, and did not follow the person of the debtor Miller in itinere. It is conceded by counsel for appellant in their argument that the precise question involved has never been decided, but it is argued from analogy to a number of decided cases, involving different facts, the Allegheny county letters should be revoked. We think the concession so far as it implies an assertion that the point has never been decided against appellant, is too broad. In Fox v. Carr, 16 Hun (N. Y.), 434, it was expressly decided that the debtor, a citizen of North Carolina, temporarily in New York state, could there be sued by an ancillary administrator, if the suit were brought in good faith. The court declined to hold that the situs of the asset was the residence or domicil of the debtor, but in effect decided that the situs was where the debtor could be sued by the ancillary administrator. Also in Goodlet et al. v. Anderson, 7 Lea, 286 (Sup. Ct. of Tenn.). In this case the plaintiffs had an assignment from one Tomlinson of a claim which the latter held against one Maclin; both Tomlinson and Maclin were residents of Mississippi. The assignees of the claim alleged that the mother of Maclin, the debtor, she being a resident of Mississippi, had there died leaving assets in Tennessee consisting of a promissory note of $5,600 of one Guy, a resident of Tennessee; this note properly would have come into the hands of Anderson, a Tennessee administrator, on the estate of the mother; the assignees commenced proceedings in the chancery court at Memphis, Tennessee, to attach the interest of Maclin in the Guy note, which formed part of his mother's estate in Tennessee. The note

had not actually come into the hands of Anderson, the Tennessee administrator; he however made no defense; but Maclin, the son, and Guy, the debtor, both appeared and contested the right of plaintiffs. The court below made a decree in favor of the Tennessee administrator against Guy, the debtor, and directed the amount of the note to be collected and paid into court, that the son's share might be appropriated in payment of plaintiff's debt against him. On appeal to the Supreme Court, the decree was reversed, the court holding that the title and the right to sue was in him who had possession of the note; as the Tennessee administrator did not have possession of it, and had brought no suit, and as plaintiffs had no possession the suit could not be maintained by the Tennessee creditor as against Guy, the Tennessee debtor, to Goodlet, the plaintiff; that administration taken out where the debtor resides, does not draw to it the title to the note until it actually comes into his hands. We think this decision sound on the reasoning given. The note was in possession of the payee when she died; it was then an asset bona notabilia at her residence; no foreign court had jurisdiction over it until it came into the hands of an ancillary administrator, over whom such court had jurisdiction. For all that appeared, the debtor may have had property in Mississippi or elsewhere, which could have been reached by the administrator of the domicil; if he thought best, he could raise an ancillary administrator in Tennessee, and deliver to him the note that suit might be brought upon it; but where he placed it there as is said of specialties " it happened to be." That case in effect rules that this Venango county administrator is an intermeddler with what is not his business; that the Allegheny county administrator, having possession of the note by the act of Viosca's executor, he alone had the right to sue upon it. As to the analogous cases cited by appellant, it will be noticed that the decedent was a resident of the foreign country where he died; he there made his will, and appointed his son, James Viosca, executor thereof; this placed in the executor the legal title and right to possession of the assets including this note; but his power as executor to collect by suit, reached no further than the territorial boundaries of Mexico; when collection in this state from a resident of this state became necessary it must be done through the intervention of ancillary

letters issued to a citizen of the state and to this ancillary administrator must be transferred the legal title and possession of the note. In refusing to recognize the powers of the foreign executor here the state does not question the legality of his appointment, or his right to the possession of the asset; the comity between civilized states requires of them an acknowledgment of each other's local laws determining rights of property. But this comity does not extend so far as an acknowledgment of the right of the foreign representative to take possession of and remove the asset beyond the jurisdiction of the state, when such removal may be prejudicial to creditors who are citizens of the state. Hence the ancillary administrator must take possession of the asset, and in his hands it is under the jurisdiction of our courts, subject to the just claims of Pennsylvania creditors. When these are satisfied the Pennsylvania representative must pay over the balance to the foreign one. The intent of the law, as so held, is not to favor a home debtor, for he needs no favor if he desires to pay an honest debt, but to favor the home creditor; to save him the hardship and expense of going into a foreign jurisdiction to collect his debt out of assets removed from his own state to the foreign jurisdiction. The argument of the learned counsel for appellant, all through, although not so expressed suggests the idea, that the requirement of a Pennsylvania administrator is for the protection of the Pennsylvania debtor at his residence; not so; it is for the protection of the assets so that they may through the courts of our state be reached by those having legal claims upon them. Says THOMPSON, C. J., in Sayre's Exrs. v. Helme's Exrs., 61 Pa. 299 : "To allow it (a foreign administrator to sue) would be to enable executors and administrators authorized by a foreign jurisdiction to collect and carry away the assets of a foreign decedent's estate, and compel domestic claimants to follow them." While it is conceded that at common law, some kinds of debts are assets where they happen to be, leases where the lands lie, judgments where they are recorded, and specialties where they happen to be, yet as to simple contract debts, it is argued their situs is the residence or domicil of the debtor."

We think the question must be decided under our Act of assembly of March 15, 1832, P. L. 136, sec. 6, which says:

" Letters testamentary and of administration shall be grantable only by the register of the county within which was the family or principal residence of the decedent at the time of his decease, and if the decedent had no such residence in this commonwealth, then by the register of the county where the principal part of the goods and estate of such decedent shall be."

The note was personal property; where was its situs when brought by the foreign administrator into Pennsylvania and sued on in Allegheny county ? There can be no question of the situs of real estate, but no such test as to fixity or immovability is applicable to personal property. In Stokely's Estate, 19 Pa. 482, this court said : " Personal property has no situs in contemplation of law. It is attached to the owner's person wherever he may be." This perhaps states the proposition too broadly, for some species of personalty, such as live stock and merchandise, though capable of quick and easy transportation, may be said to still have a situs independent of the whereabouts of the person of the owner. But as concerns other species of personal property such as bank bills, bills of exchange, promissory notes, personal jewelry and the like, its situs follows the person of the owner, as stated in Jarman on Wills, 712, " Choses in action have no locality." Their situs must be determined by the locality of the person of the owner who has them in his possession; and as stated in Schouler's Executors and Administrators, sec. 24 : " But where the personal property consists of a debt owing upon some security, which of itself is commonly transferable as possessing a mercantile value, the local situation of such security or document would in various instances be well held to confer a probate jurisdiction as bona notabilia apart from the obligor's or debtor's place of residence."

It seems to us immaterial whether the note was left in Pittsburg by the payee in his lifetime, or was brought there by his agent after his death ; it was there in the possession of the legal owner, and was by him delivered to the administrator, a resident of Pittsburg, who had the letters issued and the suit brought. If suit had been brought by the testator in his lifetime, which it is not questioned, he could have done, or if it had been left there for collection by him, the note would have been in Allegheny county for purposes of suit, and the common pleas

of that county would have had jurisdiction; in the same sense, it was there after his death for purposes of administration and suit. To fix its situs by the residence of the debtor, it must be taken from Allegheny county where it happens to be to Venango county where it does not happen to be.

The plea of appellant practically rests on the single proposition, namely, the residence of the debtor Miller was in Venango county; at common law, that fixed the situs of the chose in action in Venango county, and therefore the register of that county alone could legally issue the ancillary letters. We do not so construe the act which declares they shall be issued "where the principal part of the goods and estate of such decedent shall be." The reason for the common-law rule, that the situs of the contract debt was the residence of the debtor as we have already noticed, was not based on an intention to favor the debtor. It is stated in several of the cases cited by both appellant and appellee thus: "Judgments are bona notabilia where the record is, specialties where they happen to lie, and simple contract debts where the debtor resides and where they can be sued upon." The last half dozen words of the quotation disclose the reason of the rule; the debtor can be sued at his place of residence at all times; he may or may not be sued elsewhere, depending on whether service can be had elsewhere; it was not intended to favor him by providing for him a home forum, but the intent was to favor the creditor, that he might arrest him on capias (for imprisonment for debt was then the law), or serve him with a summons to compel appearance to an action on the contract. But the common-law rule has been expressly supplanted by our statute, which fixes the situs, "where the principal p—  the goods and estate of such decedent shall be." No account what. residence of the debtor. The whole method of adminf the residence a decedent's estate in England, by archbishops and diocesans, chiefly ecclesiastical, and the law built up on that administration, never did fit the customs and religious habits of the people of this commonwealth, and the rule, never an invariable one, that the residence of the debtor determined the situs of the contract debt, was without force after the passage of our act. The history of the ecclesiastical administration of decedent's estates as narrated by GIBSON, C. J., in Eyster's Appeal, 5

Watts, 133, is interesting as showing what the common law was, but affords no aid in the interpretation of the language of our statute, which is so plain as to be unmistakable. In fact the cumbersome methods of administration in England, with most of the many decisions on the subject, have been swept away by the statute 20 and 21 Vict. c. 77 passed in 1857. By this all jurisdiction on the subject has been taken from the ecclesiastical tribunals and transferred to a new court called the court of probate; the authority of the ordinary, the old manorial, and other peculiar courts is wholly superseded. Everything relating to the administration of decedents' estates is vested in this court, and its jurisdiction extends over all England. See Williams on Executors (7th Eng. ed.), 290, 294, etc. So not only does our statute as to the situs of personal property abrogate the common law, as it is argued it stood before that date, but the very source from which it was derived has been in great part abrogated by the British statute. Why should we go back of our own statute, and cling to the common law, dead even in England, as still the perfection of reason? Our law furnishes an easily determined and simple test as to the proper place for the issue of letters. Where, then, at the date of the issue of the letters to Mitchell, the appellee, was the principal part of the estate of James Viosca? The title and possession of the note were in the Mexico executor, James Viosca, Jr.; he carried the note with him to Allegheny county; practically, he was the owner when he stopped in Pittsburg; the chose in action being in his manual possession, it was as certainly in Pittsburg as he was; but he could not act upon it, because he was now in a jurisdiction foreign to Mexico; but this did not relieve [the] estate; ... duty of gathering up the assets [by an] auxiliary who labored under no disability; he selected Mitchell as a proper person to act in accord with him, and placed in his possession the note, and letters were issued to him; no change had taken place in the locality of the note; it was not only the principal part of the decedent's estate in Pennsylvania, it was all of it; not one cent of it was in Venango county at the time the letters were issued there. It seems to us, without a total disregard of the terms of the statute, we cannot hold that the principal part of the estate was

elsewhere than in Allegheny county. Assume as law that which is very doubtful, that if the foreign executor had made no effort to collect a debt owing by a resident of Venango county, a creditor in that county might there, without the possession of the note, have taken out ancillary letters, collected the asset, and the courts of that county would have distributed them; yet no such facts arise in this case. The foreign executor was diligent; he conformed promptly to our laws; would very soon have had the principal estate ready for distribution to home, that is, all Pennsylvania creditors, if such there proved to be; his conduct was not only not unlawful, but was in strict conformity to the law; then the prompt administration thus put in motion is now stopped by a hostile claimant of letters, who alleges no unfitness in the administrator appointed, no absence of good faith, but only, that the debtor resides in an adjoining county. The rule as stated by Schouler's Executors and Administrators, sec. 24 is: "But a convenient rule sanctioned by statute in some American states is that where a case lies within the jurisdiction of the probate court in two or more counties, the court which first takes cognizance thereof by the commencement of proceedings shall retain the same; and administration first granted shall extend to all the estate of deceased in the state, and exclude the jurisdiction of the probate court of every other county." If this alleged creditor's sole object had been the collection of a debt, there was no hindrance to obtaining his object by the grant of the Allegheny county letters; instead of frustrating as the second grant has it speeded the collection of his debt.

Nor is there any weight in the point made in the argument, that fixing the situs in any other way than by the residence of the debtor will lead to confusion in administration. It is conceded that as to a specialty, a sealed bond or a single bill, always at common law, the situs was where the "specialty happened to be;" but aside from the technical distinction as to the two forms, which enjoins distinct forms of action and involves different pleas, what difference is there in substance between a promissory note and specialty when it comes to collection and distribution? None that we can see; yet not a single case reported seems to have arisen because of any confusion in determining the situs of a specialty, while in nearly every reported

case the litigation was prompted by doubtful law and doubtful facts as to the situs of an asset resting on a contract debt. If residence of the debtor be made the test, then the first question that arises is, where is his residence? He may have more than one, many persons have; he may have none, so far as permanent sojournment in a particular county is concerned. According to modern methods, many active business men in the transaction of their business flit from county to county and state to state. Notice the numerous contested election cases; in most of them large numbers of illegal votes are averred because the voters did not reside in the district; the law holds residence to be a question of intention often known only to the voter and dependent on his oath. Is it comity to the foreign creditor to compel him to chase after a defaulting debtor over the whole state, before he can have a proper person qualified to collect his claim? Or, suppose, as in this case, there are three promisors, and suppose further, that instead of two of them being nonresidents, each is resident of a different county; if the residence of the debtor fixes the situs of the asset, in which county shall the letters be taken out? Or shall they be taken in all three? Is it not in every way fairer, more promotive of orderly judicial administration to adhere strictly to the letter and spirit of our statute, that is, administer the estate where the principal part of it shall be? Then the ancillary administrator can go into any county of the state and collect from the debtor, and the creditor in any county of the state can prefer his claim before the court having jurisdiction over the administrator when it distributes the assets collected in Pennsylvania. Look at the perplexities to this foreign administrator, if this appeal be sustained. His duty is to gather the assets; in doing this, he must act in accord with the ancillary administrator who is subordinate to him; this subordinate must have the principal's confidence, not confidence alone in his bond and sureties, for he does not want litigation to collect from the subordinate what the latter collects from the debtor, but confidence in his diligence, his business capacity and integrity, therefore, what more suitable to the circumstances, than that the principal should suggest the subordinate and that when the latter is qualified he should entrust to him the collection of the asset for distribution in the court of the situs? On the other side

is an alleged creditor, a corporation known as the "Carmen Island Salt Company;" where chartered or subject to what law, or where its place of business are not stated; it would appear from the will of Viosca, Sr., that it was located in Mexico, the domicil of the testator, but upon petition of the secretary of the corporation, appellant is appointed by the register of Venango county, ancillary administrator, that he may collect this note; he is a stranger to the executor of the domicil; has not the note in his possession; has never seen it, and has had no communication with the executor; whether appellant is a proper person to be entrusted with the responsibilities of administrator, the executor does not know; whether he would push vigorously the collection of this large amount of money against his neighbor, he does not know; yet it is urged that this son, the executor of his father's will, shall hand to this stranger this large asset and confide in his fidelity to the trust.  It seems to us no such construction of the law ought to prevail, for it would tend to defeat the very purpose of the issuance of ancillary letters.  We are satisfied the court below was right in refusing to revoke the letters issued to the register of Allegheny county and the decree is affirmed.