## In re Philadelphia Electric Company et al.

*H. B. Schultz*, for Commonwealth.

*Morgan, Lewis & Bockius*, for respondents.

FLOOD, J., June 24, 1940.—This is a hearing upon petition and answer in proceedings brought by the Commonwealth under the Act of June 25, 1937, P. L. 2063, 27 PS §434, to compel the above-mentioned companies to pay into the State Treasury, without escheat, certain "dividends or profits, debts and interest on debts, customers' advances, tolls or deposits, stock or certificates of beneficial interest", which have remained unclaimed for six or more successive years. The items affected are listed in exhibits attached to the various petitions. It appears that they can be divided into: (1) Dividends declared but unclaimed; (2) interests in stock held for issuance on presentation of, and in exchange for, outstanding securities; and (3) deposits advanced by consumers of various public utility companies. Respondents claim that the prayers of these petitions cannot be granted for a number of reasons which will be considered in order.

■ The first argument is that the Act of 1937 cannot constitutionally apply to any of these items since they are not covered by the title of the act as required by article III, sec. 3, of the State Constitution. The title is:

"An act providing for the payment into the State Treasury, without escheat, of certain moneys and property subject to escheat under existing law, namely unclaimed dividends and profits, certain debts, and interest on certain debts, proceeds of policies of insurance, stock and customers deposits. . .".

Respondents' contention is that customers' deposits, unclaimed dividends, and stock were not subject to

escheat under existing law at the time the act was passed, and the provisions affecting such items are, therefore, invalid since they relate to a subject not encompassed by the title. We cannot concur in that point of view. It is true that at first glance the title of the act indicates that only items subject to escheat under existing law are included therein, but that clause is followed by a detailed specification of the types of property affected by the act. The latter is clearly sufficient to give notice of the real subject of the act to anyone reading the title, and that is the true test for determining compliance with the constitutional provision: Annenberg v. Roberts et al., 333 Pa. 203, 209 (1938); Commonwealth v. Stofchek, 322 Pa. 513, 518 (1936). The mention of specific types of property certainly must take precedence over the mere legal conclusion that these items were subject to escheat under existing law, a conclusion that is, after all, a matter not for the legislature but for the courts to decide. The specific subjects listed cannot be limited by an erroneous statement of law also included in the title.

Despite our respect for the decisions of the Court of Common Pleas of Dauphin County on this subject, we cannot follow it to a contrary conclusion. (See the discussions in In re Harrisburg Bridge Company, 38 D. & C. 657, and in In re Harrisburg Gas Company, 38 D. & C. 611.) Therefore, the problem considered in those cases of determining whether these items were heretofore escheatable, either by statute or under the common law, need not be discussed.

In our opinion, the validity of the statute is in no way dependent upon whether the property involved is or was subject to formal escheat. Formal escheat proceedings or the alternative procedure for compelling payment of moneys into the State Treasury without escheat are independent methods whereby the Commonwealth, in the exercise of its sovereign power, assumes the custody of ownerless property: Commonwealth v. Dollar Savings Bank, 259 Pa. 138 (1917). It is immaterial which method

is adopted provided the statute is procedurally complete and at the same time adequately safeguards the interests of persons whose property may be affected.

■ It is argued that the act, by its terms, does not apply to anything not heretofore subject to escheat. This argument hinges upon the language of section 8, setting forth the procedure for the escheat. We cannot agree with it for three reasons.

(*a*) "Property heretofore subject to escheat" is defined in section 1 of the act to include all items enumerated in the act. However incorrect the legislature may have been in its understanding of the preëxisting law, the declaration in section 1 defines the property intended to be subject to this act.

(*b*) Section 8 refers to property "heretofore subject to escheat *and required to be reported*" (italics supplied) under the act. The second clause reveals the legislative intent.

(*c*) Section 9, providing the alternative procedure actually adopted in this case, does not use the phrase "heretofore subject to escheat," but applies to all money or property required to be reported under the provisions of this act.

And note that, while section 8 is a true escheat procedure, section 9 provides not for escheat, but for payment into the State Treasury without escheat.

■ Respondent next contends that the act does not affect dividends unless a fund has been set aside to pay them. In this respondent is clearly right, since the act by express provision covers only unclaimed dividends and profits "where funds have been provided by the company for the payment of said dividends or profits". The answer states that, as to certain of the unclaimed dividends, no moneys were ever set aside for their payment. Since this is a hearing upon petition and answer, the averments of the answer must be taken as true. The Commonwealth has not specified which dividends are those for the payment of which funds have been set aside, and we cannot,

therefore, at this time give judgment for it as to any of the dividends.

■ The stock interests involved in this proceeding are shares held by defendant for issuance in exchange for the shares of other corporations (or voting trust certificates or negotiable scrip) under agreements of merger or consolidation. The act provides that this unclaimed stock shall be sold in such manner as the court shall direct and the proceeds thereof paid into the State Treasury. This provision is attacked upon a number of grounds.

(a) Respondents contend that this provision violates the contractual relationship existing between the corporation and a shareholder in that it deprives the latter of his status as a member of the corporation and at the same time gives him no adequate substituted right. In respect to the latter, the act provides, in section 10 (b), that any person legally entitled to these shares may at any time apply to the Board of Finance and Revenue for the return of the property, and a refund will be ordered of the proceeds together with interest at the rate of two percent.

The State, in the exercise of its sovereign power, may take over unclaimed bank deposits and thus discharge the contractual obligation existing between the bank and the depositor: Commonwealth v. Dollar Savings Bank, supra. Respondent suggests the distinction that in such a case the contract is one for the payment of a fixed sum of money, whereas here we are concerned with a contract of a more intricate nature. The mere difference in the nature of the contractual right, however, cannot affect the *power* of the State to act. In the case of bank deposits, the protection afforded the depositor, should he reappear, by granting him a right of action against the State for the recovery of his debt, is sufficient to prevent his attacking the State's action on constitutional grounds. By the same reasoning in this case, the substituted right, if adequate, will likewise remove the constitutional objections.

It is conceded that the Commonwealth possesses the power to escheat shares of stock belonging to resident

owners who die intestate without heirs. Here we are concerned with shares of stock held for issuance but for which no claim has been presented for six years. The power of the State to take charge of apparently abandoned or unclaimed property rests upon the same basis and is as well established as its power to appropriate property left without any legal owner because of an intestacy without heirs. Each is an exercise of the State's power to conserve property within its jurisdiction which has no known owner, and it is immaterial whether the method employed by the Commonwealth to effectuate its purpose be a formal escheat proceeding or the more convenient procedure for the payment of moneys into the treasury without escheat. Compare Germantown Trust Co. v. Powell, 265 Pa. 71 (1919), with Commonwealth v. Dollar Savings Bank, supra. It is also within the province of the legislature to establish legal presumptions fixing the period of time which must pass before the property in question may be considered abandoned: Cunnius v. Reading School Dist., 206 Pa. 469 (1903), affirmed in 198 U. S. 458 (1905). The legislature has, in this act, set that period at six years. We cannot say that this is an unreasonably short time.

The remaining question, then, is the adequacy of the substituted right. The person legally entitled to the shares may apply to the State for a refund of the proceeds with interest at two percent. A claim against the Commonwealth is ordinarily ample security to insure compensation for the property of which the reappearing owner has been deprived: Commonwealth v. Dollar Savings Bank, supra, at p. 145. But, it is said, a money claim is never an adequate substitute for an interest in a corporation, the value of which fluctuates in the market according to the business conditions of the company. If that were true in a legal sense, it would apply with equal force to a great many kinds of property, and the State's right to take over abandoned property interests other than debts or money would practically disappear. It must be

remembered that there are many types of property made escheatable, or payable into the State Treasury without escheat, which are directed by the statute to be converted into cash. See, e. g., Act of May 2, 1889, P. L. 66, secs. 16, 17, 27 PS §§71, 72 (personalty and real estate owned by persons who die intestate without heirs) ; Act of June 7, 1915, P. L. 878, sec. 9, 27 PS §283 (property received for storage or safekeeping by depositories) ; Act of May 16, 1919, P. L. 177, sec. 1, 27 PS §§431, 433 (payment without escheat of property heretofore escheatable). Upon the establishing of a legal claim to the property so taken under these statutes, repayment of the proceeds has always been considered adequate compensation. We have found no cases, nor have counsel cited any, where successful attacks were made upon any of these acts based upon the inadequacy of the substituted right of the unknown owner.

We are unable to see why fluctuating values should render the State powerless to act to conserve an abandoned interest in property of this nature. It may be that a different method of handling this property would be more equitable, but we are concerned with the legislature's constitutional power, not the wisdom of its actions. If it is contrary to the policy of the State to permit property within its jurisdiction to lie ownerless, and it has always been so held, that policy may be effectuated, regardless of the nature of the property. That is the purpose of this act, but it should be emphasized that the act has not lost sight of the rights of possible claimants to the property so appropriated. In providing for the repayment of the value of the shares conveyed, a reasonable means of protecting the rights of such claimants is assured, and we cannot say in advance that it will not operate justly.

As to amount of interest payable under the statute, legal interest in any situation is always a matter of legislative determination: Guardian Bank & Trust Company Case, 330 Pa. 411 (1938). It is interesting to note that

in none of the other statutes of the Commonwealth, providing for escheat, or payment of unclaimed moneys into the State Treasury, except the Act of 1919, supra, which is similar to the 1937 act, is there provision for the payment of interest, or of any sum in addition to the proceeds of the property taken. Moreover, the question of interest has not been raised by defendants here, and probably could not be raised by anyone other than a reappearing owner.

Nor are we here faced with any irregularity such as rendered invalid the statute in Commonwealth ex rel. v. Cunningham et al., 337 Pa. 289 (1940). There the act deprived the payer of the sheriff's fee of his right of action against the sheriff, and substituted therefor a demand on the controller, without judicial review. The act under attack in this proceeding contains an express provision for an appeal to the Court of Common Pleas of Dauphin County from an adverse decision of the Board of Finance and Revenue. Moreover, under the procedure adopted by the Commonwealth in these cases, defendants have their day in court.

(b) Respondents also contend that the provisions concerning these stock interests are invalid in that they do not distinguish between shares owned by residents and those owned by nonresidents of Pennsylvania, and that the Commonwealth is without jurisdiction to take over interests held by the latter class. This argument raises the age-old controversy as to the situs of intangible property interests.

With respect to debts, the most common form of intangible personalty, a multitude of decisions can be found fixing the situs of the debt at any one of three places, depending upon the purpose for which situs must be found. For example, the domicile of the creditor determines the passage of title should he die intestate: Northwestern Masonic Aid Assn., etc., v. Jones et al., 154 Pa. 99 (1893). The domicile of the debtor is sufficient to give a State jurisdiction in garnishment proceedings: Harris v. Balk,

198 U. S. 215 (1905); or to support the appointment of an administrator: Viosca's Estate, 197 Pa. 280 (1900). For purposes of taxation, both the State of the creditor's domicile and that where the debt has acquired a business situs have jurisdiction. Compare Farmers Loan & Trust Co., Exec., v. Minnesota, 280 U. S. 204 (1930), with Bristol v. Washington County, 177 U. S. 133 (1900). In escheat proceedings, it has long been assumed that the State wherein a bank conducts its business has jurisdiction to take over unclaimed bank deposits regardless of the missing owner's last known residence, a fact which is rarely mentioned in the cases. See Security Savings Bank v. State of California, 263 U. S. 282 (1923), and Germantown Trust Co. v. Powell, supra. Only one case to the contrary has come to our attention: In re Lyons' Estate, 175 Wash. 115, 26 Pac. (2d) 615 (1933), noted in 47 Harv. L. Rev. 872 (1934).

Shares of stock are, for escheat purposes, substantially like debts. Corporations (and the act is concerned only with those incorporated under Pennsylvania law) are creatures of, and subject to constant regulations by, the incorporating State. The shares represent a property interest, a proportion of the total corporate assets. In Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506 (1938), it was said that the property right so represented arose where the corporation has its home. That case ultimately decided that shares of stock had a situs in the incorporating State for purposes of taxation. The same considerations lead to the recognition of jurisdiction in the incorporating State for purposes of escheat.

Since the power sought to be exercised by the Commonwealth is based upon the theory that the property involved has been abandoned or left without an owner, and since it therefore became necessary to ascribe a physical location to abandoned interests in corporate business, the corporation's domicile, the one place where control can still be exercised over the interest, is the only logical choice. See In re Hull Copper Company, etc., 46 Ariz. 270, 50

Pac. (2d) 560 (1935) (appropriation by State of unclaimed shares in dissolved domestic corporation). A recognition of Pennsylvania's jurisdiction to take over property of this nature does no violence to interests that may be held by nonresidents. The provisions for refunds apply equally to residents and nonresidents; both are adequately protected by the substituted cause of action against the Commonwealth.

As to the negotiability of the outstanding shares, it is to be noted that they have only a quasi-negotiability under the Uniform Stock Transfer Act of May 5, 1911, P. L. 126. They are subject to Pennsylvania law as to merger, so that now, although they purport to represent a share or other interest in the former subsidiary, they actually represent a share in defendant corporations. If this is so, we see no reason why they should not also be subject to Pennsylvania law with regard to escheat. A debt represented by a negotiable note is subject to escheat or payment into the State Treasury without escheat at the domicile of the debtor. "Certificates of deposit" are covered by section 1 of the Act of June 7, 1915, supra, and "all debts" due depositories of funds in section 3 of the same act. These clearly include debts represented by outstanding negotiable instruments. See Commonwealth v. The Finance Co. of Pa., 2 D. & C. 611 (1922), wherein funds set aside to pay bond coupons were held escheatable. There is no reason why the mere quality of negotiability should preserve a share interest from similar subjection to the escheat laws. See Security Savings Bank v. California, 263 U. S. 282 (1923).

Since the rights of the owners here are shareholders' rights and not creditors' rights, we are not impressed by the suggested danger of a suit outside the State of incorporation. No cases are cited indicating that they would have such a right. While it may be that under certain circumstances they might have such a right, we have not been apprised of any such circumstances in these cases, nor as to what the nature of such a suit would be. There-

fore, we cannot speculate that any other jurisdiction would refuse to recognize the action of the incorporating State in this matter.

In view of these considerations, it is unnecessary to discuss the other objections raised by respondents with respect to the provisions concerning stock interests.

■ Respondents also contend that the Act of 1937 cannot operate upon customers' deposits or unclaimed dividends in cases where the statute of limitations had run at the date of the passage of the Act of 1937. It is argued that, with the running of the statute, respondents became the owners of these items, or that as debts they were discharged. The Act of 1937, itself, in section 13, provides:

"The bar of statutes of limitation and presumptions of payment shall not affect the duty of making reports and payments to the Commonwealth under the provisions of this act."

It is also contended that the act must be construed prospectively, especially in view of the fact that no retroactive effect is provided for in the title.

We are not impressed by these objections. The argument that the running of the statute discharges the debt and makes absolute the debtor's title to the property is clearly fallacious. "A debt, though barred by limitation, is still a debt . . . ; lapse of time does not make the debtor's title absolute": Commonwealth ex rel. v. Cunningham et al., supra at p. 298. That case also held that the lapse of time would not prevent the declaration of an escheat. The validity of section 13 of the act with which we are concerned was upheld in Pennsylvania Indemnity Corp., C. P. No. 1 of Phila. Co., December term, 1938, no. 1890.

Defendants argue that the title gives no indication that claims as to which the statute of limitations has run are affected by the act. The title of this act is sufficiently broad to cover those things on which the statute actually operates. It specifically mentions unclaimed deposits and dividends, and contains no limitation to those on which the

statute of limitations had not run. We cannot construe it so as to limit its operation in that way. Objections to this construction on the ground that no retroactive effect is provided for in the title can best be answered by the following quotation from Germantown Trust Co. v. Powell, supra, at p. 83:

"Under section 15 the bar of the statute of limitation and presumptions of payment will not affect the duty to make report and liability to escheat according to the provisions of the act. The legislature has power, if deemed necessary, to establish a new period of limitation, or change an existing one without violating any constitutional prohibition, providing, of course, notice of such provision is contained in the title of the statute. While the subject of the statute of limitations is not expressly referred to in the title of the law under consideration, the general subject-matter provides for the escheat of money, property, debts, etc., and this language necessarily includes the fixing of a limitation period and suggests to persons interested in the subject-matter the likelihood of a provision relating to the effect to be given the existing statutes of limitation on debts subject to escheat. In other words, the fixing of a limitation period would be germane to the general subject-matter expressed in the title."

This matter is before the court on petition and answer. In view of what we have said in this opinion, judgment should be entered for the Commonwealth as to the stock certificates and as to the consumers' deposits claimed, except such as are listed in the answer as having been paid over to the owners from the date of the petition. Judgment cannot be entered for the Commonwealth as to unclaimed dividends. As to these the Commonwealth's petition must be amended to show whether funds have been set aside by the various defendants to meet the dividend payment. If the information now in the hands of the Commonwealth is not sufficient to enable it to make such amendments, it can no doubt require amended returns of escheatable property from defendants. As to the position

of the trustee for bondholders in the Reading and Schuyl-kill Navigation cases, we are unable to see any reason why the amounts payable to the bondholders are not escheatable, simply because an indemnity bond has been given to the indenture trustee to enable the corporation to get a return of the money held for the payment of these bonds.

Counsel will submit to the court appropriate forms of decrees covering these cases.