No. 22,483.

*In re* ESTATE OF HENRY BAKER, Deceased (LEE BAKER, as Executor, etc., *Appellee,* v. MINNIE WEBSTER, CELIA GENTRY, and PARTHENA SMITH, *Appellants*).

SYLLABUS BY THE COURT.

1. NOTE—*Secured by Real-estate Mortgage—Death of Mortgagor—Presentation of Claim against Estate—Statute of Limitations.* A note secured by mortgage on real estate owned by the deceased maker need not be exhibited to the executor as a claim against the estate before beginning a suit to foreclose—the real estate mortgaged having been sold by the executor to pay the debts of the estate and the expenses of administration—and failure so to exhibit within the statutory period after the executor has given bond will not bar such claim.

2. EXECUTORS AND ADMINISTRATORS—*Claim Paid by Executor—Finality of Approval by Probate Court.* A claim paid by the executor and its payment approved by the probate court in the first annual settlement, over the protest of certain heirs, who did not appeal from such approval, becomes a finally adjudicated matter which such heirs cannot question on appeal from an approval of the executor's final settlement.

3. SAME—*Agreement to Change Interest Rate on Note—Note Not Void.* An agreement written into the note referred to in paragraph 1 of the syllabus, that it should bear 7 instead of 6 per cent interest per annum from a certain named date, signed by the widow and executor, did not render such note void as to the children and heirs of the makers of such note.

Baker v. Webster.

Appeal from Leavenworth district court; JAMES H. WEN-
DORFF, judge. Opinion filed February 7, 1920. Affirmed.

*Elisha Scott,* of Topeka, *Turner W. Bell,* and *Benjamin F.
Endres,* both of Leavenworth, for the appellants.
*Lee Bond,* and *M. N. McNaughton,* both of Leavenworth,
for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendants appeal from a judgment approv-
ing and confirming the final settlement of Lee Baker, executor.
The court made findings of fact, of which no complaint is
made, to the following effect, omitting those of no importance
here. Henry Baker died testate, September 24, 1910, leaving
as his heirs his widow, Millie, and his children, Lee, George,
William, Minnie Webster, Celia Gentry and Parthena Smith.
He died seized of certain land in Leavenworth county on which
he and his wife had, in May, 1903, made a mortgage for $1,500
to Sherman Medill, due in five years. He kept the interest
paid up, the last installment being paid May 19, 1910. After
his death his widow kept up the payments, the last one being
on May 19, 1914. By his will, Henry Baker gave his prop-
erty to his wife for life and directed that at her death George
was to have $1, and the remainder of the estate should be
equally divided between the other children. The widow died
May 27, 1914, and in January, 1915, Lee Baker was appointed
executor. The widow and one or more of the other benefi-
ciaries had occupied the land up to her death, Lee Baker living
there with her most of the time. During this time they bor-
rowed various sums on their own credit which were used,
some to pay taxes, some to support the widow, and some to
improve property owned by the deceased in Oklahoma. After
his appointment, the executor borrowed $47.47 of a bank,
signing the note as executor. A few days later he borrowed
$776.77 in the same way of another bank. These claims were
afterwards presented against the estate, and the probate
court found that the notes were given for the widow's main-
tenance and for keeping up improvements on the farm, and
ordered them paid. Celia, Parthena and Minnie moved for
a further hearing on these claims, which motion was overruled

and no appeal taken.   April 10, 1916, the executor filed his first annual settlement, which, after an itemized statement required by the court had been submitted, was approved over the objection of the three sisters, who took no appeal.   Among the credits allowed the executor in this first settlement was $998.25 to one bank, $818.20 to another, and $1,639.95 in payment of the mortgage already referred to, which was paid September 17, 1915, without being first presented to or allowed by the probate court.   March 18, 1918, Lee Baker, executor, filed his final settlement.   The sisters filed objections thereto, asserting that the bank's claim for $818.20 was borrowed without authority of the probate court, and that it was not a proper charge against the estate.   Similar allegations were made touching the other bank's claim for $998.25, and the amount of the real-estate mortgage, but all three claims were allowed.   It appears that within a few months after his appointment the executor petitioned for and was granted authority to sell the Kansas real estate for the payment of debts and the charges of administration.   Counsel for the defendants, in their brief, say:

"The only questions presented by the record are: Were the claims of the Tonganoxie State Bank, The Farmers & Merchants' State Bank and the note of Sherman Medill legal demands against the estate, and should the executor be given credit for moneys paid in settlement of them?   If the Medill claim was not barred, should the note, on which his claim was founded, have been exhibited and allowed by the court, before it was paid?"

They argue that the Medill claim was barred because the statute of limitations was not tolled by the executor's payment of the interest installments, and that it began to run within two years from the time the executor gave bond.  (Gen. Stat. 1915, § 4590.)   They say that Medill did not bring a foreclosure suit, "but looked to the assets in the hands of the executor for the payment of his debts, but he did not exhibit his demand to the executor and have it allowed by order of this court, as provided by the statute."   Also, that the payments of interest by the executor did not toll the five-year statute of limitations, it having been almost eight years since the death of Henry Baker.   Decisions are cited to buttress these arguments.   We have examined them all.   There is no doubt that when a mere money claim against an estate is sought to

be collected out of the personal assets it must be presented within two years after the executor or administrator has given bond. (Gen. Stat. 1915, § 4590.) But the Medill mortgage, like the note, was signed by the deceased and his wife; it was a lien upon the land which was in no wise removed or impaired by the appointment of the executor. When the latter sold the real estate for the payment of debts he had either to sell subject to this mortgage or satisfy the lien out of the proceeds. The general rule is that a mortgage lien may be asserted, without a previous exhibit, against the property. In *Andrews v. Morse,* 51 Kan. 30, 32 Pac. 640, the failure of the mortgagee to present his mortgage within three years after the granting of letters was held not to preclude him from foreclosure and from subjecting the mortgaged property to the payment of debts. In the opinion it was said:

"The death of the mortgagor did not impair or affect the lien of the mortgage. It did not place the mortgagee who had a lien in the same position as an unsecured creditor, and remit him to the general assets of the estate to satisfy his lien. If he looks to the personal assets in the hands of the administrator for payment of his debt or any part of it, he must then present his demand under the statute. If he fails to present it within the three-year period, he can obtain nothing from the general assets, and is limited to the proceeds arising from the sale of the mortgaged property. An equitable claim like the plaintiff's is enforceable in the district court, and is not such a demand as the statute referred to contemplates. Neither the presentation of the claim in the probate court nor the failure to present it precluded the foreclosure of the mortgage lien until the mortgage debt has been paid or extinguished." (p. 32.)

It was held that failure to present within three years would prevent the mortgagee from obtaining judgment for any deficiency that might remain after exhausting the mortgaged property, but did not affect his rights to foreclose. In *Perry v. Horack,* 63 Kan. 88, 64 Pac. 990, a father and mother executed a mortgage on the homestead to secure a note, and before its maturity the father died. The mother and children continued to occupy the homestead. With products therefrom she made payments and kept the note alive. Action of foreclosure was brought more than five years after its maturity, and it was held that the mortgage was not barred as to the minor children, but was enforceable against the whole of the land, including their undivided half. It was said in the opinion

that the minors were not parties to the mortgage, but they inherited the land subject to the lien of the mortgage; that the death of the husband did not diminish the amount of the debt nor restrict the lien of the mortgage to a half or any other fraction of the land described in the mortgage. In *Jackson v. Longwell,* 63 Kan. 93, 64 Pac. 991, a husband and wife executed a mortgage to secure a note against property owned by the wife. The note became barred as to the wife by the statute of limitations, but not as to the husband. It was decided that the wife's land could be sold to pay the judgment rendered against the husband, and it was said that, the statute having run in her favor, she was discharged from personal liability on the note, but that this in no way released her, and her property should be subject to her husband's debts. It was held in *Smith v. Kibbe,* 104 Kan. 159, 178 Pac. 427, that the plaintiff was not barred from foreclosing his mortgage because of the failure to present his debt to the probate court as a demand against the estate of the testator within the period of two years. It was said:

"The liability of the testator and of the estate was a continuing one, which could be enforced at any time before the mortgage debt became barred under the ordinary limitations prescribed by the code." (p. 165.)

In *Bank v. Grisham,* 105 Kan. 640, 185 Pac. 54, paragraph 11 of the syllabus is in these words:

"The holder of a secured debt need not exhibit is as a demand against the estate of his debtor, if he is content to look only to his security for payment, and not to the general assets of the estate."

There is nothing to indicate that Medill looked to the general assets for payment of his mortgage or any part thereof, and the fact that the petition to sell the real estate was grounded on the claim that it was necessary to pay the debts and expenses indicates that the general assets were nil.

We hold, therefore, that the mortgage was not barred and the payment thereof was properly approved.

As to the claims of the two banks, it is to be observed that they were both allowed by the probate court over the opposition of the defendants, and from this order no appeal was taken. These must be held, therefore, to have passed into history by the route of final adjudication. The statute provides that—

Baker v. Webster.

"The probate court shall have jurisdiction to hear and determine all demands against any estate; and a concise entry of the order of allowance shall be made on the record of the court, which shall have the force and effect of a judgment." (Gen. Stat. 1915, § 4571.)

"In this state probate courts are courts of record, and possess full, ample, and complete jurisdiction of all matters connected with the settlement of the estates of deceased persons. . . . All their allowances of demands against the estate, all their settlements with administrators, indeed, all their official acts requiring the exercise of judgment and discretion, are, in their nature, judicial determinations, and are binding upon all the property of the estate, and upon any interest in such property that any person may have as heir, devisee, or legatee. The settlements with administrators especially come within the jurisdiction." (*Shoemaker v. Brown*, 10 Kan. ·383, 393.)

"Though a court of limited and special jurisdiction, the judgments of a probate court are as authoritative and conclusive as those of a district court, or any other court of general jurisdiction." (Marshall's Kansas Probate Law, § 27.)

While it is doubtful whether the matter is not foreclosed by the quoted expressions from the brief of the defendants' counsel as to the only questions presented by the record, considerable stress is sought to be laid on the change consented to by the widow and executor that the Medill note should bear 7 per cent interest per annum from May, 1912, whereas it was originally drawn to bear 6 per cent. Of course, the widow could not, during her life, object to the change, because she voluntarily made it. The three children who made this defense might possibly complain because of the increased rate of interest as affecting their final distributive shares, but they cannot successfully contend that this was such a fraudulent alteration as to avoid the note. In fact, no fraud was sought to be shown, and no claim is made on account of the slight difference which the changed increased rate of interest would make to these heirs, and no further discussion of this point is necessary.

For the reasons indicated, the judgment is affirmed.

### OPINION DENYING A REHEARING.

(Filed March 9, 1920.)

In a most respectful and courteous motion for rehearing counsel say that the interest change in the note was not made with the consent of the executor, because at the time when the change was made, May 13, 1912, he was not executor. At page 73 of the abstract we find the following:

"Medill and Lee Baker, the executor, sometime after the 1911 interest was paid, made an agreement whereby the note was to draw *seven per cent from May 19, 1912*, and, as stated, these words were written in the body of the note."

At page 77 it is said of Medill:

"He made an unauthorized contract with the executor and one of the joint makers of the note. It was altered in a material manner. This vitiates the note."

It is also urged that the petition for sale and the advertisement covered more land than the Medill mortgage, and it is pointed out that when Medill presented his note for payment the executor had some $6,000 in his hands—"the proceeds of the sale of more land than covered by the mortgage." Turning to the abstract again we find that the Medill mortgage seems to have covered the south half of the southwest fractional quarter of section 18, containing 80.96 acres. But the petition for sale covered this 80 and the west 30 acres of the north half of the northwest fractional quarter of section 19. The publication notice embraced the same property, as also did the return and the order of confirmation. The trial court found that—

"The receipts as shown in said first annual settlement amounted to $6,135.50, $6,050 of which was received from the sale, under the orders of the court, of the real estate herein above described" (which was the south half of the southwest fractional quarter of section 18, and the west 30 acres of the north half of the northwest fractional quarter of section 19).

It has happened more than once that attorneys in criticising us for failure to read the record have demonstrated that they themselves were laboring under a mistake concerning its contents.

The motion for a rehearing is denied.