No. 25,728.

Don L. Bowlus, Executor etc., *Appellee*, v. Wm. F. Winters, *Appellant*.

### SYLLABUS BY THE COURT.

1. PROBATE COURT—*Jurisdiction to Order Executor to Sell Mortgaged Realty to Satisfy Mortgage Thereon—Mortgage Indebtedness Not Exhibited to Court Within Two Years.* Where a probate court has jurisdiction of a testator's estate, it likewise has jurisdiction, on petition of the executor, to order the sale of realty belonging to such estate to satisfy an indebtedness secured by a mortgage thereon where the personal assets are insufficient to pay it, notwithstanding the indebtedness was not exhibited within two years to the probate court as a claim for allowance against the general estate of the testator.

2. SAME—*Specific Performance of Real-estate Contract Properly Awarded.* Record of a decree of specific performance in favor of an executor and against a defendant who had contracted to purchase certain real estate sold on order of the probate court to satisfy a testator's mortgage indebtedness examined, and no error discerned therein.

3. SAME—*Sufficient Title and Conveyance Made by Executor.* The title and conveyance tendered by the executor were not of such dubious character as to be likely to provoke litigation, nor did any such infirmity inhere in them as would justify a court of equity in denying specific performance.

Appeal from Edwards district court; ROSCOE H. WILSON, judge. Opinion filed February 7, 1925. Affirmed.

*Carl Van Riper,* of Dodge City, and *A. L. Moffat,* of Kinsley, for the appellant.

*W. E. Broadie,* of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to enforce a contract for the sale of 160 acres of land.

The property had belonged to one Sallie A. Bowlus, who died testate in 1916. By her will she directed that all her just debts should be paid out of her estate, and devised one-third of the annual

crops raised on the land in question to a daughter, Maud, for her lifetime, and provided that if Maud should die before her two children became twenty-four years of age they should receive one-fourth of the crops until they attained that age, after which time and after the death of Maud, the land was to be divided among four persons— two sons, another daughter, and a stepson. A son, Don L. Bowlus, was named as executor.

The will was executed on November 24, 1916, and the testatrix died two days later. Some months prior thereto, on April 19, 1916, she had borrowed $1,500 from the Warren Mortgage Company, and had given a mortgage on the property to secure its payment, with interest, in seven years after date.

The personal estate of Sallie, less some household goods specifically bequeathed by the will, was valued at $259. As the time of maturity of the mortgage drew near, the executor filed a petition in the probate court, alleging—

"That the amount of debts due from the said Sallie A. Bowlus, deceased, as nearly as they can be ascertained, is sixteen hundred and seventy-five ($1,675) dollars.

"That the amount of charges of administration of said estate is about one hundred dollars.

"That the value of the personal estate and effects of the said Sallie A. Bowlus, deceased, is two hundred and fifty-nine ($259) dollars."

The petition in the probate court contained pertinent recitals, and the prayer was for an order to sell the property at private sale and to use the proceeds to pay "the debts of said real estate."

The record shows compliance with the requisite statutory proceedings to sell the property, including the order of the probate court directing its sale. Pursuant thereto the executor contracted to sell the property to defendant for $7,000, less the mortgage of $1,500 and interest due thereon and the taxes for the years 1921 and 1922, all of which the purchaser assumed and agreed to pay. The contract also provided:

"Party of first part [executor] agrees to furnish second party with an abstract of title within ten days showing said land free and clear except the said mortgage and taxes. If any other liens or defects appear in said title first party is to have a reasonable time to correct the same. . . . Cancelled note and mortgage due Warren Mortgage Company and tax receipts 1921 and 1922 to be filed with probate court, Kinsley, Kansas, for receipt. In witness whereof we have hereunto set our hands this 24th day of May, 1923.

"Don L. Bowlus, party of first part,
"Wm. F. Winters, party of second part."

The contract of sale was approved by the probate court. An abstract of title was submitted to defendant, and his attorney made certain requirements thereon which eventually were satisfied (unless as hereinafter noted), and an executor's deed was tendered. This was declined, and this action followed.

About the same time foreclosure proceedings to subject the property to the payment of the mortgage indebtedness were instituted in a separate action, which has perhaps little to do with the case at bar.

Defendant grounded his main defense to the plaintiff's action on the proposition that no debts or claims were presented to the probate court for allowance within two years (R. S. 22-702), which would justify the selling of the property; that the files of that court and the petition praying for an order to sell the real estate disclosed personal assets of $259, and that there were no exhibited claims unpaid in the probate court, and none other affecting the estate cognizable by the probate court except the implied claim of the executor for compensation, about $100; that the duties of the executor had been completed, and nothing remained to be done concerning the executorship except that he be paid and discharged; and that the executor had no power to sell the property nor had the probate court power to authorize or confirm the sale of it.

The trial court made extended findings of fact, some of which read:

"3. The assets received by Don L. Bowlus as executor of the estate of Sarah A. Bowlus, deceased, were sufficient to pay all claims legally allowed against said estate, together with the probable cost of administration thereof, and all of such claims were paid and such assets received by the executor within two years of the date of his appointment. No claim by the executor for his services or for other costs of administration had been filed or allowed prior to May 19th, 1922. . . .

"5. That the mortgage note heretofore referred to on said real property was included in the amount set out in the petition of said executor to sell said real estate in his statement of the amount of debts due from said estate, and that the holder of said mortgage note has never at any time filed a claim therefore in the probate court of Edwards county, Kansas, against the estate of Sarah A. Bowlus, deceased. Since this case was tried and after judgment had been rendered in favor of the defendant, and while the matter was pending on a motion for a new trial, an action was commenced in the district court of Pawnee county, Kansas, for the purpose of foreclosing the mortgage hereinbefore mentioned.

"6. The abstract of title submitted by the plaintiff to the defendant did

Bowlus, *Executor,* v. Winters.

not contain any statement of the claims allowed or paid against the estate of Sarah A. Bowlus, deceased.

"7. That the parties to this action by their course of dealings and negotiations rendered the time of the performance of the contract immaterial.

"8. Prior to the time of the filing of the petition the plaintiff had tendered an executor's deed for said land and furnished an abstract of title and tendered performance of his contract, which tender had been refused by the defendant.

"CONCLUSIONS OF LAW.

"The court concluded as a matter of law that specific performance of the contract for the sale and purchase of said real estate between the plaintiff and the defendant should be decreed."

Judgment was entered in favor of plaintiff. Defendant appeals, contending that the probate court proceedings were void, and that the executor's deed would afford him no protection against the heirs and devisees of Sallie A. Bowlus, and that no such title was tendered him as he should be required to accept and pay for under the equitable principles governing specific performance.

It is settled law that within its jurisdiction a judgment of a probate court unappealed from is as binding as that of a court of general jurisdiction. (*Lake v. Hathaway,* 75 Kan. 391, 89 Pac. 666.) Appellant contends that the probate court did not have jurisdiction to authorize a sale of the property to satisfy the mortgage indebtedness, because there was no timely presentation of a claim therefor in that court. In *Bank v. Grisham,* 105 Kan. 460, 473, 185 Pac. 54, it was said:

"It is also urged that the debt was not exhibited as a demand against the estate. That formality is not required of a mortgagee, if he is content to look to his security alone for payment, and not to the general assets. (*Andrews v. Morse,* 51 Kan. 30, 32 Pac. 640; *Linn v. Ziegler,* 68 Kan. 528, 75 Pac. 489; *Smith v. Kibbe,* 104 Kan. 159, 165, 178 Pac. 427. See, also, *Robertson v. Tarry,* 83 Kan. 716, 112 Pac. 603.)"

So the real question is whether the probate court had jurisdiction to authorize a sale of the property to satisfy an indebtedness which incumbered it, but which, being a secured indebtedness, did not have to be presented to the probate court for allowance—a claim on the property involved, although not a claim on the general estate unless presented to the probate court for allowance, but one which the probate court could not affect, either by allowance or disallowance, if the security were sufficient for its satisfaction.

It has been held that an executor may be compelled to use personal funds of an estate to pay off a mortgage indebtedness on real

estate, although the latter indebtedness was neither presented to nor approved by the probate court. (*Smith v. Kibbe,* 104 Kan. 159, 165, 178 Pac. 427.)

In *Baker v. Webster,* 106 Kan. 326, 187 Pac. 870, 1119, a testator had devised his mortgaged farm to his wife for life, with remainder to some of his children. His executor borrowed various sums to pay taxes, to support the widow, and for other purposes. The executor paid off the mortgage indebtedness on the farm (to Medill, mortgagee) without first having it presented to, or had it allowed by, the probate court. Some of the remaindermen filed various objections to the executors' final settlement, including the amount claimed by him for paying off the mortgage on the farm. This court said:

"It appears that within a few months after his appointment the executor petitioned for and was granted authority to sell the Kansas real estate for the payment of debts and the charges of administration. . . . There is no doubt that when a mere money claim against an estate is sought to be collected out of the personal assets it must be presented within two years after the executor or administrator has given bond. (Gen. Stat. 1915, § 4590.) But the Medill mortgage, like the note, was signed by the deceased and his wife; it was a lien upon the land which was in no wise removed or impaired by the appointment of the executor. When the latter sold the real estate for the payment of debts he had either to sell subject to this mortgage or satisfy the lien out of the proceeds. . . . There is nothing to indicate that Medill looked to the general assets for payment of his mortgage or any part thereof, and the fact that the petition to sell the real estate was grounded on the claim that it was necessary to pay the debts and expenses indicates that the general assets were nil.

"We hold, therefore, that the mortgage was not barred and the payment thereof was properly approved." (pp. 328, 329, 330.)

In *Randel v. Randel,* 64 Kan. 254, 67 Pac. 837, it was held that where it was a known fact that the personal property of an estate was insufficient to pay the debts of the deceased, the administrator was not required to wait until such debts had been presented and allowed, but might apply at once for an order to sell realty to create a fund to pay them. The court said:

"It is contended that the sale of the real estate is void because at the time the probate court made the order of sale there were no debts established or allowed against the estate of the deceased. There is no provision of our law which provides or requires that debts shall be allowed against the estate by the probate court before lands may be ordered sold. The law is that when the administrator ascertains that the personal property will not be sufficient to pay the debts he may petition the court to sell the real estate. (Gen. Stat. 1901, § 2919.)" (p. 255.)

The statute just cited is R. S. 22-801, which reads:

"As soon as the executor or administrator shall ascertain that the personal estate in his hands will be insufficient to pay all the debts of the deceased and the charges of administering the estate, he shall apply to the probate court for authority to sell the real estate of the deceased, or any interest he may have in any real estate situated within this state subject to the payment of debts."

Neither by the statute itself, nor by the interpretation thereof, as shown in the excerpts of cases above cited, can it be said that the executor, under sanction of the probate court, had no power to sell the property to pay the secured indebtedness due the Warren Mortgage Company. Nor can there be any doubt of the jurisdictional power of the probate court to give its sanction thereto. The pertinent statutes read:

"22-802. In order to obtain such authority, the executor or administrator shall file his petition in the court which issued his letters testamentary or of administration."

"22-804. The petition shall set forth the amount of debts due from the deceased, as nearly as they can be ascertained, and the amount of charges of administration, the value of the personal estate and effects, and a description of the real estate to be sold."

"22-807. If the court is satisfied that it is necessary to sell real estate of the deceased to pay his debts, it shall order the real estate described in the petition, or so much thereof as may be necessary for the payment of the debts, to be sold at public or private sale, as the court may direct, by the executor or administrator, for cash in hand, or upon deferred payments not exceeding two years, with interest, as shall be ordered by the court."

It is argued, however, that if the files of the probate court are searched it will appear that no debt had ever been exhibited against the estate of sufficient magnitude to justify the order of the probate court that the property be sold to satisfy it. That argument is mere reiteration of the contention that the land can only be sold to pay debts which must be proved against the estate. A fair reading of the statute warrants no such interpretation. The statute does not even require the executor to defer his application to the probate court for leave to sell the realty until claims which would seemingly justify its sale have been presented. (R. S. 22-801; *Randel v. Randel,* supra.) And on proper occasion the probate court may approve the sale of realty to pay a debt never exhibited in conformity with the provisions of R. S. 22-702, the so-called statute of non-claim. (*Baker v. Webster,* supra.) In view of this, it seems clear that the probate court had jurisdiction to order the sale of the realty of the testatrix to satisfy the indebtedness.

This conclusion, of course, necessitates an admission that the testamentary disposition of the property will fail. This is measurably true, but when Sallie A. Bowlus made that will she knew she had already mortgaged the property, and knew that by her will she was making no provision to pay the indebtedness secured by it, and knew that she had insufficient assets to meet that indebtedness, and as everybody is assumed to know the law, she knew to a moral certainty that, barring possible circumstances she could not foresee, her land would be sold in a few years either by her executor or by the mortgagee, her creditor, and her testamentary disposition of it in whole or in part defeated.

It follows that the probate court had jurisdiction to authorize the sale of the property; the proceedings under which the property was sold contained no irregularity, and being unappealed from were binding and valid against either direct or collateral attack. If the heirs or devisees of Sallie A. Bowlus, or other interested parties, should dig into the official files pertaining to this estate they will have no difficulty in discovering that the material facts alleged in the executor's petition were perfectly true, and that the indebtedness for the payment of which this property was ordered sold did exist, and that its *bona fides* was beyond dispute, as the probate court did determine and as it had jurisdiction to determine. (11 R. C. L. 326, 327, 339, 341.)

The conveyance tendered to defendant, an executor's deed, was the only sort of deed an executor proceeding under lawful authority could execute, and defendant cannot be heard to say that he contracted for any other; and there was no infirmity in the title or conveyance to justify its rejection or to relieve defendant from his contract of purchase. (Maupin on Marketable Title to Real Estate, 708; 25 R. C. L. 275-276.)

The other arguments urged against the judgment have been considered but need no discussion. The record discloses no error and the judgment is affirmed.

Burch, Mason, and Harvey, JJ., dissenting.