No. 29,550.

CHARLES G. TONER, *Appellant,* v. THE CONQUEROR TRUST COMPANY, *Appellee.*

(293 Pac. 745.)

Opinion filed December 1, 1930.

*Arthur Scates* and *Albert Watkins,* both of Dodge City, for the appellant.
*O. G. Underwood,* of Greensburg, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This action was brought by plaintiff against the defendant as administrator of the estate of Samuel C. Gorrell, seeking to recover judgment against the administrator on account of a breach of warranty contained in deeds executed and delivered to plaintiff by the deceased prior to his death. The trial resulted in judgment in favor of defendant, and plaintiff appeals:

The record shows the following situation:

Samuel C. Gorrell and Melissa C. Gorrell were husband and wife. Prior to the death of Melissa C. Gorrell they acquired two quarter sections of land in Kiowa county, Kansas, which were conveyed to them jointly. Melissa C. Gorrell had been married three times. As a result of her first marriage to a man named Madaus she had two children, W. H. Madaus and Mary Madaus. After her husband died she married one Patrick Toner, who was the father of the plaintiff in this action. By him she had two children, the plaintiff, and Vannetti Toner, now Vannetti Bratton. After the death of Patrick Toner she married Samuel C. Gorrell and had one child by him, Teressa Gorrell. Teressa Gorrell married one Lon Gaut and to them one child was born, Marvin Gaut. Both Teressa and her husband died, leaving the son Marvin. When Melissa C. Gorrell died she left surviving her the following heirs at law: Her husband, Samuel C. Gorrell; W. H. Madaus and Mary Madaus, children of her first marriage; Charles G. Toner and Vannetti Bratton, children of her second marriage, and Marvin Gaut, the son of her daughter by her third marriage. It appears, therefore, that at her death the one-half interest in the two quarter sections of land which she owned descended as follows: one-half thereof, or a one-fourth interest, to her husband, Samuel C. Gorrell; and the other half (or one-fourth interest) to her children and the grandchild above named, equally share and share alike. These five descendants inherited one-fourth, or a one-twentieth each, so that following the death of Melissa C. Gorrell the two quarter sections of land were owned three-fourths by Samuel C. Gorrell and an undivided one-twentieth each by the four children and the grandchild named above.

Subsequent to the death of Melissa C. Gorrell, Samuel C. Gorrell again married, and with the above situation existing with reference to the title to the real estate and being the owner of only an undivided three-fourths interest, on August 27, 1920, he and his then wife executed a general warranty deed to one quarter section of land to the plaintiff herein for a consideration of $8,000, as recited in the deed. Later on March 14, 1921, and with the same situation existing with regard to the title, Samuel C. Gorrell and wife conveyed the other quarter section to the plaintiff by general warranty deed for a recited consideration of $5,500. At that time the appellant paid Gorrell $1,500 cash and executed a purchase-money mortgage on the quarter section for the remainder of the price, $4,000.

From the foregoing it appears that the warranty deeds made by Samuel C. Gorrell and wife were effectual to convey only a three-fourths interest in the real estate, and that there was a failure of title to the extent of a one-fourth interest in both quarters.

Following the execution of the deeds and the mortgage above mentioned, Samuel C. Gorrell died on August 20, 1921, a resident of Newton county, Missouri. On September 7, 1921, the appellee Conqueror Trust Company was appointed administrator of his estate. Upon its appointment the purchase-money note and mortgage of $4,000 given by the appellant on the last quarter section purchased came into the hands of the trust company as administrator. Thereafter the appellant paid one installment of interest on September 14, 1921, and made this payment to the administrator. Nothing further was paid, and when the mortgage became in default and the appellant did not pay it the administrator instituted suit in the district court of Kiowa county, Kansas; to foreclose the mortgage on the quarter section. The foreclosure suit was begun on December 21, 1923. In the foreclosure action the appellant employed an attorney to represent him. The attorney filed a demurrer to the petition, which was overruled, and thereafter filed no other pleading. The other heirs intervened in the foreclosure suit and established their interest in the real estate. The case proceeded to default judgment and appellant's interest in the property was advertised to be sold in the foreclosure proceedings. The sale was advertised to take place on December 7, 1925.

On December 5, 1925, two days before the advertised sale date, this action was brought. The petition is drawn in three causes of

action: The first sets forth the transaction with regard to the purchase of the first quarter section, the breach of covenant of warranty in that instead of receiving full fee simple title the plaintiff received only a three-fourths interest in the land and asks to recover one-fourth of the purchase price because of failure of title to that extent. The second cause alleged the purchase of the second quarter section of land under similar conditions and for recovery of one-fourth of the purchase price paid for that quarter. The third recited the bringing of the foreclosure suit and the fact that judgment had been obtained by default and that a sale was advertised. It alleged, further, that on account of illness of the attorney for defendant in the foreclosure action no answer was filed in time, and also alleged an agreement between counsel for defendant in that case (appellant herein) and counsel for the trust company, that counsel for the defendant in the foreclosure case was to have time to file an answer later. That this agreement was violated and counsel for plaintiff in the foreclosure suit failed to give notice and took judgment by default contrary to the promise and understanding in open court between counsel in that case, and that the default judgment was therefore wrongfully obtained.

In the third cause of action in the instant case, after pleading substantially the foregoing, plaintiff asked that the judgment in the foreclosure case be set aside; that the sale of the land advertised for December 7, 1925, be restrained, and that plaintiff have judgment on his first and second causes of action against the defendant for the sum of $3,375, and that it be set off against whatever indebtedness plaintiff might owe the estate on the purchase-money mortgage.

Thereafter a hearing was had before the court and the issues on the third cause of action were first taken up and tried. This was treated as a petition to set aside and vacate the judgment in accordance with R. S. 60-3011. The court after hearing the evidence on the third cause of action decided against the plaintiff and entered judgment for costs in favor of defendant. Plaintiff then employed his present counsel and from this decision appeal was taken to the supreme court and the appeal was decided in *Toner v. Conqueror Trust Co.*, 126 Kan. 554, 268 Pac. 810. In that decision this court held:

"Where a petition states facts sufficient to constitute a cause of action and contains additional statements for the purpose of having a certain judgment vacated and set aside, such statements may be regarded at request of plaintiff

as surplusage and the petition allowed to stand as an independent action." (Syl. ¶ 1.)

"An attempt to vacate a judgment by petition under R. S. 60-3011 is not an inconsistent remedy so as to bar a recovery upon the cause of action set up in such petition when stripped of such allegations as were made to have judgment vacated." (Syl. ¶ 2.)

In that case the judgment of the trial court was reversed and the cause remanded with instructions to permit plaintiff to have a hearing on the first and second causes of action of the petition and for further proceedings.

The defendant trust company thereafter filed an amended answer in which it denied any liability to the plaintiff on the claim set up in his petition; alleged that the defendant had been appointed administrator of the estate of Samuel C. Gorrell; had qualified and given notice of appointment as such; that plaintiff in the action knew defendant had been so appointed. Defendant then pleaded specially section 182 of the Revised Statutes of Missouri, 1919, reading:

"All demands not thus exhibited in one year shall be forever barred, saving to infants, persons of unsound mind, or in prison, and married women one year after the removal of their disability, and said one year shall begin to run from the date of the granting of the first letters on the estate, where notice shall be published the first insertion within ten days after letters are granted; and in all other cases said one year shall begin to run from the date of the first insertion of the publication of the said notice."

Defendant in its amended answer further alleged that the claims of plaintiff had not been presented within one year in the probate court in which defendant was appointed, and were therefore barred by the above statute of nonclaim. Defendant further pleaded that plaintiff had been guilty of laches in failing to exhibit his claim in the probate court of Missouri and pleaded the statute of nonclaim of the state of Kansas, provided in section 4 of chapter 188 of the Laws of 1911, now R. S. 22-702. Defendant alleged, further, that under the laws of Kansas the plaintiff could have obtained letters of administration after the expiration of the fifty days from the death of the deceased and that plaintiff failed and neglected to obtain such letters on the estate of Samuel C. Gorrell in the state of Kansas; that his claim or demand was not exhibited within two years after the expiration of the fifty days; that the claim of plaintiff is barred by the statute of nonclaim of the state of Kansas and the administrator is not liable in any sum whatsoever.

To this plaintiff replied admitting appointment of the defendant as administrator but denying all other allegations, and further pleaded that the mortgage of $4,000 executed by plaintiff to Samuel C. Gorrell and referred to in plaintiff's petition was a part of the personal effects of Samuel C. Gorrell at the time of his death; that the mortgage came into the hands of defendant as administrator as a part of the personal estate in Missouri; that upon the death of Samuel C. Gorrell he had no estate or property of any kind within the state of Kansas.

Upon the issues so joined the case was tried May 9, 1928, by the court and without the intervention of a jury. Opening statements were made and the chain of title was stipulated upon in open court. Execution of the warranty deeds was stipulated upon and it was agreed that the deeds were as shown by the records. Plaintiff testified about the purchase of the land and that at the time he purchased the two quarters he received abstracts from Gorrell; that these had been left in the bank but were under his control; that he did not apply for appointment as administrator in Kansas; that he did not file any claim in the probate court of Newton county, Missouri, for the damages he is claiming in this case.

The files and records in the foreclosure case, which was No. 3396 in the district court of Kiowa county, Kansas, were introduced in evidence and among other things in this file there appears a stipulation dated January 31, 1927, which agreed, in substance, that Toner—

"shall at once pay $2,200 upon said judgment, and all accrued costs; the plaintiff, in consideration thereof, to recall said alias order of sale and postpone further proceedings to enforce said judgment until final determination—by the appellate court in case either party shall prosecute an appeal—of all questions claimed by Toner to be untried and undetermined in No. 3587. That if Toner recover nothing in No. 3587 (the case at bar), or if he recover judgment in said case, he will within thirty days after such final determination pay the balance of the judgment in case No. 3396, and accrued interest thereon, or pay the difference in favor of the trust company between said balance of judgment and the judgment he recover, if any, in case No. 3587, without causing the trust company to prosecute further proceedings for the enforcement of its judgment."

In its behalf defendant offered a certified copy of the letters of appointment showing it was appointed administrator of the estate of Samuel C. Gorrell on September 7, 1921. It also offered in evidence an authenticated copy of the Revised Statutes of Missouri in proof of the section hereinbefore quoted.

At the close of the evidence the court took the case under advisement and after consideration of the evidence and the argument of counsel on September 3, 1929, rendered judgment in favor of defendant for costs. From this judgment plaintiff appeals.

There is practically no controversy between the parties in this action as to the facts in the case. The difficulty comes in the application of the law to the facts.

We have heretofore noted that the defendant pleaded the provisions of the statutes of nonclaim of Missouri and Kansas and it is the contention of the appellee that the appellant should have presented his claim to the probate court of Missouri within one year from the time of the appointment of the administrator, and that having failed to do so he is barred from now maintaining his claim. That in the event the statute of nonclaim of Missouri for any reason does not apply, then the appellant should have taken out administration proceedings on the estate of Gorrell in the state of Kansas; that the time permitted by law to a creditor in which to take out administration in Kansas had expired prior to the institution of this suit, and that therefore by reason of his neglect to take out administration proceedings in this state and file a claim within the statutory time allowed by the Kansas statute of nonclaim, the appellant is barred from maintaining this action.

The appellant raises several points which we will consider in their order. First: That the nonclaim statute of Missouri has no extraterritorial force or effect and cannot operate to bar his claim in this action. It is pointed out in Goodrich on Conflict of Laws, section 81, page 157:

"A distinction is made by the courts between those matters which relate to substance, sometimes called matters of right, and those which relate to procedure, or matters of remedy. The latter are governed by the law of the forum, regardless of where the transactions occurred out of which the claim now in litigation arose."

The appellee cites *McDaniel v. Putnam*, 100 Kan. 550, 164 Pac. 1167, in which this court, in construing our statute of nonclaim, held:

"Except by some provision in a will, requiring the keeping open of an estate longer than two years, the statute controls. A person has no power by an oral agreement with his creditor to establish a different rule as to the time for the presentation of a claim against his estate than the rule declared by the statute of 'nonclaim,' barring all demands against estates of deceased persons which are not presented within two years." (Syl. ¶ 2.)

At the conclusion of the opinion the court uses the following language:

"In *Collamore v. Wilder,* 19 Kan. 67, 81, the creditor was held bound to obey the plain requirements of the statutes, and the fact that he fails to present a claim in reliance upon 'an agreement which the administrator had not the power to make is a mistake of law on his part for which the courts furnish no relief.' It has been held that the statute absolutely extinguishes the right of the claimant instead of affecting merely the remedy. (18 Cyc. 937.)" (p. 556.)

From this the appellee seems to argue that the statute relates to a matter of substance. It is to be noted that in the McDaniel case, *supra,* an effort was made by the claimant to present his claim and have it allowed in the probate court after the statutory time had expired. It is clear that the interpretation given the statute by the court in that decision is correct. If a claimant wishes to present a claim in the probate court in this state then he must do so within the time prescribed. The statute sets forth a definite mode of procedure with reference to the presentation of claims in the probate court, and so it is with the Missouri statute. It relates to the method of procedure with reference to presentation of claims and the administration of estates in Missouri. The McDaniel case did not have under consideration the question of whether a similar statute in another state should be given extraterritorial effect. There is no obligation on this court to give the Missouri statute of nonclaim extraterritorial effect. Neither are we able to find any clear decision which impels us to now hold that it should be given extraterritorial effect.

In *Hartman v. Fishbeck,* 18 Fed. 291, it was held:

"Notwithstanding the statutes of a state provide that the county courts of such state shall have jurisdiction over the estates of deceased persons in that state, and limit the time within which claims against such estates must be filed, and actions brought to recover thereon by creditors resident of that state, a citizen of another state, being a creditor of the testator or intestate, cannot be acted upon by any proceedings under that statute, unless he shall have voluntarily made himself a party to them, so as to impair his constitutional and legal rights to sue the executor or administrator in the circuit court of the United States." (Syl. ¶ 1.)

"The limitation of time within which by the statute claims must be presented for allowance in the probate court, is inseparable from the peculiar procedure prescribed; it is a part of that procedure, and so not like a general statute of limitations, and can only be applied to parties who are bound by such special mode of procedure." (Syl. ¶ 4.)

In discussing the question in the opinion the court said:

"The proposition of counsel is correct, that, in the absence of legislation upon the subject by congress, the courts of the United States recognize the statutes of limitation of the several states, and give them the same construction and effect as are given them by the local tribunals. (*McCluny v. Silliman,* 3 Pet. 270; *Ross v. Duval,* 13 Pet. 45; *Leffingwell v. Warren,* 2 Black, 599.) But it can hardly be contended, I think, that the statute in question creates a limitation to which the rule or principle invoked is applicable. It is not like the general statute of limitations of the state which, in cases of contract, limits the time for the commencement of an action to six years. Here the statute prescribes a certain course of procedure in connection with the settlement of estates, to be pursued by creditors in the enforcement of their claims. It provides a certain remedy, which is made exclusive in the state. The limitation of time within which, by the statute, claims must be presented for allowance in the probate court, is inseparable from the peculiar procedure prescribed. It is a part of that procedure and so not like a general statute of limitations; and as the plaintiff here was not bound to pursue that remedy, but being a citizen of another state can sue in the federal court, he is not affected by a limitation which cannot be separated from the special statutory mode of procedure." (p. 294.)

In *Wilson v. Hartford Fire Ins. Co.,* 164 Fed. 817, 19 L. R. A., n. s., 553, the court discusses the following question:

"Is a claim against the estate of a deceased testator which is barred in the state of his domicile because it was not presented for allowance within the time fixed therefor by the administration statutes of that state thereby barred in another state in which an administrator with the will annexed is proceeding to administer upon property of the testator in the latter state?"

The facts were that one Charles P. Dewey died a resident of Illinois. His will was proved in the probate court of Cook county and the time for presentation of claims in that court expired. The Illinois statute provided that if not presented within the time prescribed claims should be forever barred. In the meantime another person had been appointed administrator with the will annexed in Kansas, and after the time to present his claim for allowance in Illinois had expired and before the time for presentation in Kansas had run the insurance company brought the action in Kansas. In discussing the matter the court said:

"But the property of the estate which is situated in Kansas is not controlled, nor is its administration or distribution governed by the laws of the domicile of the testator. The laws of Illinois have no extraterritorial force, and they are powerless in the state of Kansas. The property of the estate of the testator in that state is subject to and it must be administered and distributed in accordance with the laws of the state of its situs. . . . Thus it conclusively appears that the administration and distribution of the Kansas property of deceased nonresidents is governed by the laws of Kansas and not by the laws of their domicile." (pp. 818, 819.)

We hold, therefore, that the Missouri statute of nonclaim does not have extraterritorial force in Kansas.

Taking up next the contention made by appellant that administration proceedings in Kansas were not permissible or authorized by law for the reason that the deceased was not the owner of any property in Kansas when he died—upon this the appellant cites *Estate of Mallory v. B. & M. R. Rld. Co.,* 53 Kan. 557, 36 Pac. 1059, in which it was held:

"Where a person dies intestate, who was not a resident or inhabitant of the state at the time of his death, and who left no estate within the state to be administered, a probate court of the state has no jurisdiction to issue letters of administration on the estate of such intestate; and where letters are issued, the acts of the court in doing so are utterly null and void." (Syl. ¶ 1.)

We will, therefore, consider the question: Did the deceased leave any estate in the state of Kansas upon which administration proceedings could be taken out by the appellant in this case?

The record is quite clear that the deceased left no real estate in Kansas and no assets of any kind or character except the indebtedness of $4,000 which was owing by the appellant to the deceased. The record also shows that this indebtedness was part of the purchase price of the quarter section of land last purchased by the appellant from deceased. The indebtedness was evidenced by a promissory note secured by a mortgage on the real estate. The note and mortgage were at the domicile of the deceased at his death and came into possession of defendant there as domiciliary administrator. Now, under this situation, where was the proper situs for administration proceedings on this particular asset of deceased?

In 32 Cyc. 675 it is said (discussing the situs of property):

"The general rule is that personal property has no locality but follows the person of the owner, and is assignable, transferable, or transmissible by his voluntary act, according to the laws of the country of his domicile."

It is true that a continuation of the text criticizes the general rule and points out some decisions from other states which limit its application. However, it seems to this court that the rule is a proper one to apply in determining the situs of personal property for the purpose of administration.

Section 342, 23 C. J. 1142, reads:

"An unforeclosed mortgage on real property passes to the executor or administrator of the mortgagee like the money right evidenced by bond or note which it was given to secure. If the mortgage is paid off by the mortgagor it

is the executor or administrator of the mortgagee, and not his heirs or devisees, who should receive payment and release and acknowledge satisfaction; and the money received by the personal representative of an equitable mortgagee, in redemption of the mortgage, should be charged by the probate court to the representative and ordered distributed as personal estate."

We find no criticism of that well-established doctrine. The mortgage on real estate is an incident to the note which it secures. The note is the evidence of the indebtedness. The mortgage is the instrument giving security for it. When the note is transferred the mortgage goes with it. In the case at bar the record shows that the note and mortgage were at the domicile of the deceased when he died and there came into possession of the defendant.

As to the situs for purposes of administration there is a pronounced conflict of authority. The courts are not agreed upon any definite rule to apply in such a situation.

In section 45, 23 C. J. 1016, it is said:

"The general rule is that simple contract debts are, for the purpose of administration, assets where the debtor resides, and it is usually considered that the locality of such a debt for this purpose is not affected by the fact that a bill of exchange or promissory note has been given for it, because the bill or note does not alter the nature of the debt, but is merely an evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable, although it has also been held that such a debt is to be regarded as being located at the place where the instrument by which it is evidence is found; and that promissory notes are *bona notabilia* at the domicile of the decedent when they were left there at the time of his death. The locality of a debt evidenced by the note of the debtor is not affected by the fact that the note is secured by a mortgage of real estate."

We are also aware of the fact that this court in the case of *Moore v. Jordan*, 36 Kan. 271, 13 Pac. 337, decided in 1887, uses the following language:

"Prior to the death of the intestate, the notes had no fixed situs, but followed the domicile of the owner, wherever that might be. After his death they lost their transitory character and became local. The principal administration to which all others are subordinate is at the domicile of the intestate, and the universally recognized rule of law is that the succession to and distribution of personal estate is governed by the law of the place where the intestate was domiciled at the time of his death. . . .

"However, the letters of administration confer no authority beyond the limits of the state granting them. The title acquired by the administrator of the domicile is but a fiduciary one, and can only be enforced in another state by permission of its laws. No state is required under any rule to surrender the effects or debts due to an intestate domiciled elsewhere to the prejudice and injury of its own citizens. Although the title and right of the

domiciliary administrator may be recognized *ex comitate,* it is subject to the rights of the creditors of the estate where the assets exist, or the debtor of the deceased resides. It would be very unjust to require creditors in this state to seek their remedy in another jurisdiction when there were assets here; and it is well settled that the creditors of each state are entitled to payment before the assets of the estate are withdrawn to another jurisdiction. (Story on Conflict of Laws, sec. 512.) So the rule has become established that debts, such as are evidenced by promissory notes, are *bona notabilia* at the domicile of the debtor. . . . (Citing *Wyman v. Halstead,* 109 U. S. 654, and other cases.) . . .

"Under our statute an administrator of this estate may be appointed in Kansas who can maintain an action to recover any debts due to the estate from persons resident here, and after the local creditors are paid, if any exist, the surplus, if any, should be paid to the administrator in Illinois. (Gen. Stat., ch. 37, sec. 174.)". (pp. 274, 275, 278.)

A careful examination of that case discloses the fact that what is said therein with reference to the propriety of administration proceedings at the domicile of the debtor was not necessary to a decision of the point before the court. The point there before the court was a question as to whether the domiciliary administrator of the deceased had a better title to the note and mortgage than the ancillary administrator who happened to get possession of the note and mortgage. Both the domiciliary administrator and the ancillary administrator were in states other than Kansas.

On several occasions this court has cited the *Moore v. Jordan* case, *supra.* Reference is made to it in the case of *Hartley v. Hartley,* 71 Kan. 691, 81 Pac. 505; in *Ames v. Bank,* 105 Kan. 83, 81 Pac. 564, and *Jasper v. Thomas,* 124 Kan. 163, 257 Pac. 714. But a careful reading of these cases discloses the fact that in none of them was the precise question under consideration which we now have before us.

In *Ames v. Bank,* supra, the following language is quoted from the *Moore v. Jordan* case:

"The courts, however, are not entirely uniform in their holding upon this question. (The question as to whether promissory notes are *bona notabilia* at the domicile of the debtor.) Some of the authorities hold that the title to these evidences of debt is not only in the domiciliary administrator, but that they are assets in his hands instead of at the domicile of the debtor." (p. 86.)

It appears that for the first time this question of whether or not it is proper to grant administration at the domicile of a debtor residing in Kansas is squarely before the court.

What is the nature of this indebtedness? So far as the payee of the note is concerned the debt existing as to him in Kansas is

simply a right—that is, a right to be repaid. The right has become embodied in a document—a promissory note—which in turn is secured by a mortgage on real estate situated in Kansas. The note, it must be remembered, is negotiable. Over the period of years in which the law merchant has been developed and made applicable to commercial activities of every sort, from time to time, well-defined rules have been of necessity adopted by the courts and legislatures of the various states, seeking to permanently establish and define the rights of parties giving and holding negotiable instruments. It has been well established that the debt—the *chose* in action—is merged in the note. The note passes from hand to hand by indorsement. A note given in Kansas to-day may appear at a bank in New York within a few days in the due course of business; or a holder of the note may negotiate it to an individual residing in another state, so that at the time of the death of the original holder the note may be legally owned by a *bona fide* purchaser in a foreign state and the debtor may be without any notice that the note has been transferred. If an administrator could be appointed at the domicile of the debtor and the debtor forced to pay the indebtedness by this administrator, it might well be that under those circumstances the debtor would pay to the administrator and the estate would be closed and distribution made to the heirs, and perhaps a year or two later, when the note became due, the holder in some foreign state might come in and sue the debtor on this note, and under these circumstances what would we say? The answer is obvious. The law books are full of cases where men have paid their indebtedness on promissory notes and failed to obtain a surrender of the note and through this neglect have been obliged to again pay the indebtedness at the suit of a *bona fide* holder of the promissory note. This is simply well-established and perfectly sound law. These decisions have all been rendered necessary by the commonly recognized rules of the law merchant and the code relating to negotiable instruments. The welfare and progress of commercial life of the state and nation demand that the mercantile theory as to the nature of negotiable paper must be followed whenever possible to do so.

In *Wheeler v. New York*, 233 U. S. 434 (1914), it was said:

"But it is plain that bills and notes, whatever they may be called, come very near to identification with the contract that they embody. An indorsement of the paper carries the contract to the indorsee. An indorsement in blank passes the debt from hand to hand so that whoever has the paper has

the debt. It is true that in some cases there may be a recovery without producing and surrendering the paper, but so may there be upon a bond in modern times. It is not primitive tradition alone that gives their peculiarities to bonds, but a tradition laid hold of, modified and adapted to the convenience and understanding of business men. The same convenience and understanding apply to bills and notes, as no one would doubt.in the case of bank notes, which technically do not differ from others." (p. 439.)

As recognizing the proposition that the presence of a negotiable instrument in the state is sufficient upon which to found an administration upon the estate of a deceased nonresident are the following: *St. John v. Hodges,* 9 Bax. (68 Tenn.) 334 (1878); *Viosca's Estate,* 197 Pa. 280, 47 Atl. 233 (1900); *Giddings' Ex'rs v. Green,* 48 .Fed. 489 (1880); *Iowa v. Slimmer,* 248 U. S. 115 (1918).

On the other hand, the following cases have held that simple contract debts are assets at the domicile of the debtor for the purpose of founding administration even where a bill of exchange or promissory note has been given as evidence of the debt: *Baker v. Baker, Eccles & Company,* 242 U. S. 394; *McCully v. Cooper,* 114 Cal. 258, 46 Pac. 82; *Neal v. Boykin,* 129 Ga. 676, 59 S. E. 912; *Hensley v. Rich,* 191 Ind. 294, 132 N. E. 632; *State, ex rel. Graff, v. Probate Court,* 128 Minn. 371, 150 N. W. 1094; and our own case of *Moore v. Jordan.*

An examination of a number of these cases will disclose that in stating the rule as above it is done by way of dicta, and that the proposition there stated was not necessary to a decision of the case, as was pointed out with reference to the case of *Moore v. Jordan.*

To attempt to reconcile these cases is impossible. One argument that has been advanced in support of the doctrine of permitting administration proceedings at the domicile of the debtor is that a foreign administrator does not have authority to sue in all the states. That in states which do not permit a foreign administrator to sue in order to collect the assets of the deceased it is necessary that an administrator be appointed at the domicile of the debtor so as to bring suit against the debtor and collect the assets. This argument is of no force in Kansas because, under the terms of R. S. 22-1308, it is provided:

"An executor or administrator duly appointed in any other state or country may sue or be sued in any court in this state, in his capacity of executor or administrator, in like manner and under like restrictions as a nonresident may sue or be sued."

Another argument advanced which has considerable logic is that

every state is jealous of the rights of its own citizens, and in order to protect the people residing within its bounds who have claims against a deceased nonresident, if there be any debts due a non-resident in this state, the creditor residing here should be permitted to take out administration proceedings and collect the assets here and apply the proceeds to payment of a resident creditor without being put to the inconvenience and expense of going to a foreign state to present his claim. This sounds fair enough, but, on the other hand, the state should be equally solicitous to protect the debtor of the nonresident deceased who resides within its bounds. If the resident debtor cannot obtain a valid release and discharge of his debt by payment to an administrator appointed in this state who does not have possession of the note, then manifestly to permit an administration at the domicile of the debtor would work an injustice on him.

We believe that the decision in the case of *Moore v. Jordan*, holding that the domiciliary administrator had superior title to the note there in controversy and that the ancillary administratrix who was appointed in the state where the debtor was only temporarily living, and who there came into possession of the note and mortgage, was not entitled to sue and prevail thereon, is correct. In view of the well-established rule that the principal administration of an estate of a deceased must be had at the place of his domicile, we are not prepared to go so far as to say that administration proceedings may be taken out wherever the negotiable instrument happens to be found. This is not necessary to a decision in this case. In the instant case, under the facts now before us, we do hold that inasmuch as the principal administration had been properly taken out at the domicile of the deceased and the administrator there appointed had possession of the note and mortgage, that no administration of the estate could be had in Kansas at the domicile of the debtor on the debt evidenced by that note and mortgage. It therefore follows that the plaintiff in this case could not be barred from his right of recovery under the Kansas statute of nonclaim. Neither is he barred by laches or a failure to have administration proceedings taken out within proper time, and the case of *Clark v. Eaton*, 109 Kan. 574, 201 Pac. 71, and other similar decisions cited by the appellee have no application.

The appellant, in support of his position, advanced the fact that

we have decided that a cause of action to foreclose a mortgage against real estate is not barred by reason of a failure to present a claim on the indebtedness to the administrator. This is true, but these cases all hold that the cause of action for the purpose of realizing on the security is not barred and that if a creditor of that character desires to look to the general assets of the estate for any deficiency, then he must file his claim in the probate court. (*Smith v. Kibbe,* 104 Kan. 159, 178 Pac. 427; *Baker v. Webster,* 106 Kan. 326, 187 Pac. 870, 1119; *Bowlus v. Winters,* 117 Kan. 726, 233 Pac. 111.)

The appellee urges that the appeal should be dismissed and that we should not consider it for the reason that the notice of appeal was not filed within six months from the date of the judgment, admitting at the same time that it was filed within six months from the time the motion for new trial was overruled. Judgment was entered on September 3, 1929; motion for new trial was overruled on October 15, 1929, and notice of appeal was filed March 13, 1930.

The questions raised by appellant herein were raised in the motion for new trial, and inasmuch as this appeal is within the time so far as the order overruling the motion for new trial is concerned, the appellant is entitled to have his case considered by this court on its merits.

One of the grounds set up in the motion for new trial was that "the judgment and decision of said court is contrary to the evidence." The case was tried to the court. If the court admitted incompetent and irrelevant evidence it should not have been considered in rendering the judgment. Over proper and timely objections the trial court admitted testimony that the appellant had never filed any claim against the estate in the probate court of Newton county, Missouri; admitted the Missouri statute of nonclaim, and testimony that appellant had never made any effort to take out administration proceedings in Kansas. The ground of appellant's motion for new trial, as above set forth, required the court to reconsider the admitted evidence and the objections thereto when passing on the motion for new trial, and at that time the question before the trial court was: "Is the judgment sustained by the material, competent evidence, notwithstanding the fact that incompetent and immaterial evidence was received?" When put to this test, in view of the conclusions we have reached on the questions raised by appellant, it was error to overrule the motion for new

trial. It thus appears that the points raised by the appellant herein on the appeal are necessarily involved in a consideration of the motion for new trial. It has been held that an appeal may be taken from an order overruling a motion for new trial although six months have elapsed from the time of judgment. (*Tucker v. Tucker*, 97 Kan. 61, 154 Pac. 269.) Where an appeal is not taken within time so far as the judgment is concerned, but is taken within time as to the order overruling the motion for new trial, this court is limited on the appeal to a consideration of such matters as are involved in the motion for new trial. In this case the questions raised by the appellant on appeal are necessarily involved in the motion for new trial because it required the trial court to reconsider the evidence and his rulings thereon as to competency and relevancy.

The appellee further contends that the appellant should not be permitted to recover in this case because of lack of evidence—contending there was no evidence whatsoever in the record showing the amount appellant paid the deceased for the two quarter sections of land. The record on this point shows the following:

Both deeds are in evidence.

It is stipulated that they are as shown by the records of Kiowa county, Kansas.

The first deed stated a consideration of $8,000, the receipt of which was acknowledged in the deed.

The second deed recited a consideration of $5,500, receipt of which was also acknowledged.

This evidence is sufficient to make out a *prima facie* case and there was no attempt made to rebut or disprove it. We hold, therefore, that the evidence as introduced was sufficient to establish plaintiff's claim for the amount sought in his petition.

In view of the conclusions here reached this case is reversed and remanded with instructions to the district court to enter judgment in favor of the appellant for the amount of $3,375 as prayed in his petition. It is so ordered.